Counsel? Good morning, Your Honor. May it please the Court, my name is Zachary Nightingale. I'm counsel for Petitioner Yanyan Ellen Chen, who is in court today with her children. This is a consolidated case. The first appeal is a direct appeal from the Board of Immigration Appeals, who affirmed without opinion the decision of the immigration judge, and therefore... I have a couple of questions for you. Please. I'm sure we all do. It looked to me as though Chen is raising before us an argument that she should have been told she might be eligible for violence against women relief, but she didn't raise that in front of the BIA. She did actually raise it in the notice of appeal. The notice of appeal to the BIA... She has to argue it, doesn't she? No, she doesn't. The reason is this Court, in Aguiman, referred to its prior decision in Lada, said that raising the issue in the notice of appeal, even inartfully, Aguiman said, is sufficient. And the reason is, as noted in Lada, is the briefs are optional. There can be an appeal that only involves the notice of appeal. And so raising it in the notice of appeal In fact, those cases came from prior cases that said if you don't sufficiently raise something in the notice of appeal when there isn't a brief, then it's waived. But as a result, Aguiman and Lada said raising it in the notice of appeal puts the BIA on notice, especially in a case like this where the regulation is intended to protect the petitioner called respondent there. And it would be very difficult for a petitioner to say the judge didn't inform me of something I didn't know about, and that was an error. What was raised in the notice of appeal is a reference to both domestic violence and drama. I understand your argument on that. I don't want to use all your time with it. Thank you. The next thing that was on my mind is the ineffective assistance argument. It looked to me as though the lawyers had a really good reason not to raise the Violence Against Women Act, and that is that if they did, there would be more examination of the marriage, and the marriage was almost certainly a sham, and it would have been exposed. I mean, the woman supposedly married a man who was homosexual, wouldn't touch women, and was dying of AIDS at the time. It kind of looks like a sham. Well, your ---- That's what the lawyers say. They're asked to explain it. They say we just didn't want to open that can of worms. With due respect to those lawyers, I believe they are ineffective even to this day because they don't understand immigration law. They claim it was better to pursue the adjustment of status. But the adjustment of status required a visa petition, and any visa petition requires examination of that first marriage. So their claim that we were pursuing an alternate form of relief would have gotten the court back to that same point of examining her first marriage. Moreover, the court proceeding below in front of the immigration judge did exactly that. It did examine, there was three days of testimony, 68 documents, six or eight witnesses all on the issue of the marriage, and the judge found Petitioner Chen credible. He said, I believe this is a consummated relationship. I don't believe you engaged in the fraud. And he found her completely credible. Moreover, he granted her voluntary departure, which is a discretionary form of relief where you have to show good moral character. So if the judge had found that ---- Just keep, leave right alone. But the thing is, her only option for relief was under the VAWA law, under the suspension. That's the only form of relief she would be eligible for. Otherwise, all voluntary departure does is send her out of the country. So the only thing, in fact, the lawyer in front of the judge didn't apply for any relief. He was under the misapprehension the judge could grant her adjustment of status until the very end when the judge said she would like to qualify her voluntary departure. And the judge grants voluntary departure, finding that she didn't engage in any fraud and she was a person of good moral character. So the examination of the marriage, as far as what the Petitioner's role was, actually occurred in front of the judge, and the judge ruled in her favor. So at that point, the judge should have said, and based on the evidence, you're eligible for VAWA suspension, or her attorney should have said, based on everything the judge found, at that point, the judge was dealing with a deportability question, because she was charged with deportability for fraud, and the judge says, you're not deportable for fraud. So at that point, the judge should have said, what application is she eligible for, and the attorney should have said, she meets all the qualifications for VAWA suspension. She's been here three years. She's found to be a person of good moral character, and there's evidence of the abuse. The attorney didn't even recognize to make that application, and then the attorneys on appeal, who are the ones who responded to our accusations, I think the court's referring to, say, well, we wanted to pursue this other form of relief, adjustment of status, because we didn't want an examination of the marriage. But the adjustment of status, A, required a visa petition. B, she couldn't apply for that because she came on the fiancé visa, so she's legally barred, something that they don't acknowledge even to this day. And C, even if it wasn't for the fiancé visa problem, in order for her to adjust based on the second marriage, she has to show the merits of the first marriage anyways. So even a path based on the second marriage would still take us back to the question of the first marriage. Kennedy. Okay. On the marriage, because the judge had already made a finding, the lawyers could say, you don't need further examination. You've already made a determination. Well, I mean, if she had planned to adjust based on her second marriage, she couldn't because she entered on a fiancé visa. The fiancé visa statute clearly says you can only adjust based on marriage to that individual who was your fiancé. Who brought you in. Exactly. So by the time he was divorced and deceased and she had a new husband, even though everyone might agree it's a valid marriage, she couldn't adjust on that in the United States. So that's the problem, is that everybody ignored that statute, everybody being those three attorneys, and assumed that would be viable. Who would have decided the VAWA, assuming a VAWA application had been filed, who would have decided that, the I.J. right there in their application? The immigration judge. Would have made that determination? After he found her not deportable on the fraud charge, he then said, basically, what form of relief are you applying for? And the attorney only said voluntary departure. In fact, the judge asked the attorney, do you want to apply for voluntary departure? At that point, the attorney could have said, we'd like to file for VAWA suspension, which is a variation on traditional suspension, and the judge hears that application. Or the judge himself could have said, based on everything you presented to me, you make a prima facie case for VAWA suspension. Would you like to file that application? Certainly, there's a hardship requirement, but that was mentioned in the case because the judge was well aware she was pregnant at the time, and he was aware her husband had diabetes. So the factors for even extreme hardship were readily apparent, and either the judge or the attorney could have then made that application. And I believe, since the judge would have likely approved it, since he found in her favor on credibility, and he found she's a person of good moral character, in order to grant her the voluntary departure. So there's every reason to think the judge would have been favorably inclined at that point to the VAWA suspension application as well. Or if the case is eventually remanded, he still should be. But you had an additional claim against the third lawyer. On the asylum. Yeah. Yes. That's the basis for that. At the point that she was represented by the third attorney, she had her second child, which then called – and also the second child was born within four years of the first child. And that calls into question whether the Chinese government would then harm her for violation of their strict one-child policy, since at that point she had two children. It wasn't until that point that she would be found in violation. And, in fact, the State Department report that was referenced, I believe, in the Third Circuit's Guo decision, references that persecution is particularly applied when the two children are within four years of each other. Born outside of China? Well, that is a question. But there is evidence that at times when they go back, then they have to register, they have to ask for services. They're into the system, and at that point the problems occur. I thought the only evidence in the record was that if the second child is born when they're outside of China, China doesn't count it on its one-child policy. I don't believe the record says that. I don't think the record addresses that exactly either way. But I think that the State Department observes that when the age difference of the children is more or less than four years is what often makes the difference. So since in this case they're within four years, we believe that makes a prima facie case, again, that is sufficient to go back to the judge on that. So let me just make sure I understand the argument here. So the first lawyer is ineffective for failing to request relief on the basis of VAWA at the end of the hearing. Correct. Okay. So that's his claim. He had a prima facie case. Right. He failed to do it. Ineffective assistance of counsel. Correct. Reasonable probability that it might have been granted. Correct.  So then she gets a second lawyer who appeals to the BIA. The second lawyer does the BIA appeal. And tell me precisely why she was ineffective. Because our position is that a Petitioner should have been – should have filed the VAWA suspension. When your case is on appeal at the BIA, you can file a motion to remand with a new application for relief, and there's no time and numerical limit on that because the case is still pending. You can do it while it's pending. You can do it while it's pending. So the first – the second attorney should have filed such a motion or – or could have raised the fact that the judge violated the regulation and not advising her. Either way. But certainly the case was alive at that point. Could have brought this to the attention of the court. The court should have said, sure, she meets all the requirements, send it back to the judge for a new hearing. Instead, she said, we want to pursue this other form of relief, which, you know, even the government at that point said, no, she's not eligible. That's an absurd argument. In her brief to the BIA. In her brief to the BIA. On that adjustment of status. Exactly. So – and she didn't even pay attention to the notice. The notice of appeal was actually filed by the first attorney. Right. And then he switched. So she ignored what was somewhat more intelligently raised in the notice of appeal and did her own argument and completely failed to notice this. And then the third attorney took over the case after the BIA decision or at the time of the BIA decision, and there's still a 90-day window to file a motion to reopen timely to the BIA. And the third attorney failed again to raise that same argument. So we acknowledge – Plus she didn't raise the cancel – plus raise – She didn't raise initially. And also – Asylum and – She did not raise the asylum. That's correct. And the – also, she ghostwrote a pro se motion to reopen that did not raise it. So that used up the one motion to reopen that the Board allows. So when she obtained new counsel and we filed that second, the late motion to reopen, we had to allege that the reason it was the second and the reason it was late is because of the ineffective assistance of the prior counsel who could have filed on time and could have filed the first one and could have filed even while it was before the judge or while it was on appeal at the BIA. Your claim that each of the three lawyers did an incompetent job requires as an element, as I understand it, some reasonable probability that they would have succeeded had they done what you think they should have done. Is that right? Yes. Now, under my reading of the record, it looks as though, in a sense, they would have had a shot at not getting contradictory evidence once the husband was dead. But even so, the circumstances cast such substantial doubt on Chen's story that her chances of success, if she'd raised all these different arguments and claims that she didn't raise, don't look that great. Why would she have a reasonable probability of success? Because it goes back to the same Judge Tway who decided the case in the first place. And he already heard. It's like the more he knew about it, the more he'd be inclined to say, what was I thinking? Well, he certainly should have the opportunity. Given the fact that he unequivocally said, I find her credible, I give full evidentiary weight to her testimony. How was that? He wasn't bound by that. He wasn't. We don't have to shh. Had he been further informed. Correct, Your Honor. He could have. It's not like he started with credibility. Had he learned more about Chen, he could very well have said, I don't know what I was thinking. I'm withdrawing my finding of credibility. This Court's case law says the standard for prejudice is the outcome may have been affected. So based on the immigration case. Any logical possibility that it could have been affected is enough for ineffective assistance? Well. I don't think so. In this case, there's more than a logical possibility because the judge heard her testify not just about her entry visa but about the whole marriage and relationship and found her to be credible. He also heard from the government. He also heard from the other witnesses. And he found her testimony credible. He found that she consummated the marriage. And he found that she is a person of good moral character. So that is not just a logical possibility. That means if you ask the judge who made the decision what he thinks of the petitioner, he has a very favorable impression of her. I don't know that that follows. A lot of judges, if they're going to find against somebody without calling them a liar, they'll find against them without calling them a liar. But if it then becomes important. But he didn't find against her. He granted the only thing her attorney applied for, voluntary departure. He didn't have to. He could even have said. I gather good moral character is a requirement. Voluntary departure requires five years of good moral character. She had been in the United States three years. And all the events happened in the United States. So he could have said maybe you weren't involved with the fraud, but there's something fishy here, and I'm going to deny you voluntary departure. He could easily have said that. He didn't. He went out of his way to say I find you completely credible. There's only two people who know what happened. One of them is no longer with us, and one of them has testified in court, and I believe her. And for that reason, he found her testimony worthy of full evidentiary weight. So what meant in that case was voluntary departure, you can come back again sometime. It means you can depart the United States without a deportation on your record. Right. But he noted that she was pregnant at the time. He granted her a particular amount of time in light of that pregnancy. He was clearly exhibited sympathy to her situation. And I think that an attorney who could have taken that to the next point and said, well, then we absolutely can file this VAWA application. We can't say with certainty today the judge would have granted it, but he may have granted it. That's all we need. I'd like to reserve the rest of my time. Let me just ask you one minor question. Sure. There was an appeal of the denial of the adjustment by the district director. The visa petition. The visa petition. How does the district director's rulings on that and the affirmance by the BIA interface with what the IJ did? That's on a different section of law. The standard there is substantive and probative. So that's all the district director needed to find was there wasn't substantive and probative evidence of the marriage validity. But the immigration judge has a higher standard on deportability, which is clear, convincing, and unequivocal. The judge found that there was not clear, convincing, and unequivocal evidence that she engaged in fraud on the visa. And the ground that bars you from the VAWA suspension also is a deportation ground, which, first of all, she wasn't even charged for. Marriage fraud. But it's marriage fraud. And that also has the clear, convincing, and unequivocal. So, first of all, that wasn't charged in the NTA, so it doesn't bar her. But even if it were to be charged, the fact that the director said under 204C it's marriage fraud, that's a lower standard. So it doesn't require or bind the judge to find the higher standard to make her ineligible. That just basically allowed them to move into removability proceedings. It's exactly. And then the burden is a higher one, and they didn't make it. And that's why the judge found you're not deportable under that fraud ground. Okay. If I could reserve the rest of my time. Thank you. If it pleases the Court, Barry Pettinato appearing on behalf of the Attorney General. I want to just quickly dispose of the first petition for review because I think it's very clear that there's no jurisdiction over that because of the exhaustion issue. Their only argument that it was raised is the notice of appeal. And what the issue that they had to have raised in the notice of appeal is that they were making specific allegations against the immigration judge that, in fact, the immigration judge had acted inappropriately in not advising them of their apparent eligibility. So they had to have alerted the board. And when you look at the notice of appeal, which is in the second administrative record at 445, you'll see that the only thing that they said in paragraph 2, which is what the petitioner is referring to, is they made a passing reference to the fact that she was a victim of domestic violence, and then she cites the 1994 VAWA law. Now, how on earth the board could have read that one-sentence statement that she was making an allegation of impropriety against the immigration judge is beyond me. It simply isn't there. They never briefed the issue, and there's clearly been no exhaustion in this case. And they can't raise the issue of impropriety by the immigration judge for the first time before this Court because that case law is well settled that, in fact, when the board is in the position to remedy a procedural due process violation, which they could have here, they must exhaust it in front of the board. So accordingly, this Court has no jurisdiction over the first petition for review and should simply dismiss it. As to the second petition for review, I want to take up Judge Payaz's question regarding the interplay between the removability and what happened in front of the district director. Throughout their brief and throughout their argument, they have repeatedly assert that, in fact, the immigration judge found that she had not committed marriage  And that simply isn't the case. That's a clear misapprehension of what, in fact, the immigration judge found. They never charged her in the notice to appear. The notice to appear doesn't charge her with marriage fraud. Exactly. And that's why one of the reasons why it's very clear that that's not the finding that the immigration judge made, that she wasn't involved in marriage fraud, because that issue wasn't. We had a contested deportability hearing, and the issue that was before the immigration judge was, did she commit fraud at the time of her entry into the United States on that K-1 fiancé visa? And he found, in the end, that the government was not able to establish, by clear convincing and unequivocal evidence so as to make her deportable, that, in fact, in obtaining the fiancé visa, she didn't commit fraud. Right. And when you look at the immigration judge's decision, it's very clear that that's the limitation that he's making in his decision. In my brief ---- So don't you end up with there's no finding that she committed fraud coming in in her documents, and there's no finding of marriage fraud? Exactly. There's no ---- So marriage fraud was really not on the table in front of him. Marriage fraud didn't come up then. Let me see if I've got this right. The I.J. can think, well, when she came in as a fiancé, there's insufficient proof of fraud. She might not have realized the guy is a homosexual who won't touch women and he's dying of AIDS. She just thinks she's got an American fiancé waiting for her. But then he could consistently have found, had it been raised and it wasn't, marriage fraud, because once she discovered what she had here, no way she was going to get any further into it. Well, in some ways, the marriage fraud issue was raised because the public parties were throwing out everything that related to the circumstances surrounding this marriage. So many husbands and wives here that, frankly, I can't keep it straight. Okay. Everybody's got multiple marriages. Right. So I may be all confused on the facts. Well, no, you're right. But I think the important thing to keep in mind is the government didn't charge marriage fraud. The only charge that she obtained, the fiancé visa. And ultimately, that was the only issue that was really decided by the immigration judge. Notwithstanding, there were these collateral issues about the overall marriage in front of them. There's no finding in the end that there was no marriage fraud committed. And Petitioner repeatedly asserts that. Now, on the parallel track, you have, on two different occasions, the INS, the service, the legacy INS, found that, in fact, she could not establish by the preponderance of the evidence that her marriage, in fact, was not fraudulent. And the two contexts that happened in was in the initial denial when Baldwin filed a visa petition that was originally approved. And then, based on that visa petition, she filed an application for adjustment of status to become a lawful permanent resident. And that's in the second administrative record at 871 and 876. And that's the district director's denial basically saying, we have found that you committed marriage fraud. You haven't been able to prove to us that you, in fact, this is a bona fide marriage. That was not appealed. Then her second husband, Mr. Wu, he filed the visa petition for her. And, in fact, that's the long decision that really clearly lays out this case. And that's in the second administrative record, 843 to 854. And that's the 11-page decision conducted by INS examinations. And the one thing that's really significant to note about that is they had the benefit of Mr. Baldwin's, while he was still alive, they interviewed him, they have his additional contradictory evidence regarding the circumstances of the marriage, which the immigration judge did not have the benefit of. He was dead by the time of that hearing. So when the INS issued the notice to appear and listed the grounds for removable ability, had the district director made either of those decisions that you're just going through? I believe — I don't know. I don't think it was at the time of the notice that the order to show cause was. But I think in the course of the proceedings, because they dragged out for a while, I think eventually those two decisions were made. Clearly, by the end of the proceedings, they were, because they're in the record. Both of them are in the record. But there was never any attempt to amend the notice to appear. To charge marriage fraud? To charge marriage fraud. No, there was not. I'm not sure why that was. I don't know. I don't know. I didn't — I don't know. I can't say why the government just didn't decide to. Frequently, the government only has to establish deportability. And if you start laying on multiple theories of deportability, it doesn't really matter, because once they're deportable on one ground, then you move on to the relief phase. And so adding on multiple grounds of deportability really is just keeping it on for no reason. All right. Well, I didn't mean to just — you were pretty snappy there. I just wanted to wind up those two. Right. So in this case, what the Court has to keep in mind is there was no marriage fraud finding it by the immigration judge. In effect, the law of this case now is that she has been found to have entered a sham marriage for immigration purposes, not for this particular petition for review, but the law of her case, because that's over and done with. She appealed that to the board. The board affirmed the 11-page decision by the district director. In fact, that's why she can't ever get another visa petition approved, because she is saddled with having been found to have entered a fraudulent marriage. And that's the law of her case. She cannot get around that in any way, shape, or form. That's settled. She's exhausted all of her appeals. There's no place else to go. And so in — now, the board's decision in the second petition for review, the motion to reopen, I just want the Court to note that this was a case where the board gave this case substantial consideration. The Court may have noted that this is a three-panel member, and I know the Court sees lots of board decisions these days, and I think it's a rare case where you see a three-panel member decision anymore, seven pages sort of addressing this very complex sort of case. So the three board members did give this case consideration, and found that, in fact, it was very unlikely — that was the first reason that they denied the motion. It was unlikely that she would get a motion that she would receive value-added relief based on the fact that, on two occasions, she had already done battle with the — with the INS on this issue, and, in fact, she lost both times, and she was found to have entered into a fraudulent marriage. Are you — your point that with those two district director decisions, that the I.J. could not have granted her value-added relief? No. I'm not saying that he couldn't have granted her. It would have — one of the hurdles — the whole issue may have been relitigated in the VAWA context because, in fact, one of the statutory requirements for that bad-red spouse is the fact that — in fact, that she hadn't committed marriage fraud. Now, whether the findings by the district director would have been — amounted to a sort of collateral estoppel on the issue, I don't know. That's questionable. Because that's questionable because the whole burden is different. Right. Except in — It's not the same issue. It's — yeah. It's somewhat different. And so she would have had to have faced the hurdle of marriage fraud all over again if it ever did go down. And I — and I would assume that she — in light of the record now, the two findings by the district director, she's going to have a huge problem facing ever overcoming that hurdle, that, in fact, that marriage isn't fraudulent. I think if you read the 11-page decision, the full investigation by the agency, it yields — it's unquestionable the fact that this was a fraudulent marriage. So I think the Board is on very solid ground saying it's — we're not going to grant reopening in this case. They're just making — they're making a prediction. They're making a prediction. But, you know, the Supreme Court has said, and that's well settled, that, in fact, they can jump ahead and look and see if, in the exercise of discretion, it's likely you're going to get this relief or you warrant this relief. And here, I think the Board is saying, you don't warrant this relief. Look at this — look at the marriage fraud findings that we have here. It didn't look to me like they were really exercising their — you know, making a discretionary on VAWA or — It's a little unclear to me what — It looked to me like they were making a prediction, what would have happened. Yes. What might happen. Yes. And I read that to mean, Judge Payes, that the — whether they were saying, ultimately, you won't get in the exercise of discretion or pulling back from that. We don't think we should give this to you in the exercise of discretion. I don't know if it's really clear from the decision, but it's — I think, ultimately, what they're saying is, you don't deserve this in the exercise of discretion. You're not going to get this in the exercise of discretion. Was there a problem with the second marriage? There was no marriage fraud there, right? No. And, as a matter of fact, I concede it's probably a bona fide marriage. However, under the immigration laws, once an alien is found to have entered a fraudulent marriage, there and after, they're forever precluded from adjusting their status based on a visa petition. That's in 204C of the INA. One of the things I want to just point out — There's no exceptions to that. There's absolutely no exceptions. It's well-settled law that once there's a finding of marriage fraud and you've exhausted all your appeals on that, that's it. It's over. We don't yet have a finding of marriage fraud. We do have a finding of marriage — Well, by the district director. Not in terms, Your Honor, not in terms of removability, deportability ground, 237. Well, this is an old OSC case, so it would be a 241 ground. We don't have — she's never been found deportable on marriage fraud, but we have in the visa petition an adjustment of status. Her argument is, in light of the district director's decisions, and some of the evidence that was presented at the administrative hearing here, it's unlikely that the IJ would not find that she had engaged in marriage fraud. Exactly. And therefore, she's not going to get — she's not going to prevail on her VAWA petition. Exactly. And you have to keep in mind, we're talking about a motion to reopen here that's well-recognized as disfavored. We're talking about a motion to reopen that's unquestionably time and number barred. So we're sinking down three levels here. I don't understand one thing. What's that, Your Honor? The IJ found her credible on the question of marriage fraud, right? He found her credible on the issue about whether she obtained the K-1 visa. Well, isn't that the same as marriage fraud? I mean, he found that — made a lot of findings of fact that would indicate no marriage fraud, didn't he? Well, but the issue of marriage fraud wasn't really directly in front of him. He — his findings — No, it wasn't. But whether it was or it wasn't directly in front of him, it looked like the findings were such that had it been directly in front of him, he had found no marriage fraud. I mean — Well, no, he — not marriage fraud, Your Honor. I would beg to differ, because he never used the word marriage fraud. What he said was — And he found some raw facts, it looked like to me, which would be a part of a finding of no marriage fraud. That's what he said. There might be some facts. I'll — there might be some facts there that might look favorable in terms of the overall big decision of — on — related to marriage fraud. But the issue of marriage fraud was not directly in front of him. Could he have just been finding fiancé — no fiancé fraud? Well — I'm thinking sometimes a woman, honestly, thinks she's engaged to be married, comes to the U.S. with high hopes, and then the fiancé turns out to be a real disappointment, as the homosexual dying of AIDS would be. I — I would agree, Your Honor. And I'd point out in my — in the brief related to the second petition, some of the language I pointed out on page 14 and 15, where he says, Chen did not commit fraud, quote, in the application of a fiancé visa, quote, for fraud. So it is fiancé fraud, not marriage fraud. Yeah, exactly. And then he goes on to say, Chen, quote, did not know, nor did she participate in any scheme in the application of her fiancé visa, close quote. And he says this also. It is my finding that the Respondent did not commit fraud as charged by the service, which was fraud related to the marriage. And they only charged fiancé fraud, not marriage fraud. Exactly. Fraud at the time of entry. Do you read what he said on the question of their sexual relations, that they did have sexual relations, as she said? He finds that he believes the marriage is consummated. I don't know why he made that. I mean, that in itself is a finding of fact that would contradict marriage fraud on the basis that he was a homosexual and could not have sexual relations. Well — Right? I mean, that's — that contradicts the whole notion of marriage fraud because he was so weakened by AIDS and he was also homosexual that he could not have had sexual relations. He's found to the contrary, right? He did. And I don't know why he found that — he made that finding because it wasn't necessary in any — The whole case is all so mixed up here. I mean, I — Straightened out. It's a complicated case. I — and it's a complicated case because, you know, the theme of Petitioner's case is everybody's done me wrong. The immigration judge and my three attorneys, that's the theme. They keep harping at it and trying to — If you believe the I.J.'s findings of fact, you would have to agree, wouldn't you, that they've done her wrong. I mean, the one finding of fact that seems salient in the whole case is what the I.J. found after a two-day hearing listening to witnesses, right? I would respectfully disagree, Your Honor, in terms of the ultimate issue that was decided by the immigration judge, and that was the — that was that she didn't commit fraud at the time of entry. He wasn't examining whether she had been — committed marriage fraud because that was not an issue before him. He may have made a few findings that could be read to support a contrary conclusion, but that issue was not directly in front of him. So let's just assume for a moment that this were to go back to the — ultimately get back to the I.J. and she were allowed to file a VAWA petition. I guess what you're saying is at that point, because one of the elements of VAWA relief that she would have to establish that she was married, is that all? What would she have to establish? No. One of the things that I think is most critical of concern to you, Judge Paius, is the fact that she has going to have to establish the fact that she's not — she's not deportable from the marriage fraud, that — the very same ground that we didn't charge. So if it goes back — So it goes back. So that's when marriage fraud would be on the table. Exactly. Because she has to overcome that statutory hurdle that she, in fact, is not eligible — is not deportable on that ground, which was never an issue in the first go-around with the immigration. Well, I just got a pretty sympathetic case now — I mean, looking at it now, from this point. Well, Your Honor, if you consider the extent of her marriage fraud here, I don't think it's sympathetic at all. Well, there still has to be a real, you know, by the IJ, a finding of marriage fraud. In order for her to establish her statutory eligibility. Right. But in terms of discretion and the Board's discretion in granting a disfavored motion to you — Well, I mean, that gets back to ineffective assistance of counsel. Well, on that issue, one of the issues — things that I wanted to point out to the Court that actually escaped me until I was reviewing this case, there — in terms of the third counsel, Ms. Jones, the last counsel, they're making all of these allegations against Ms. Jones. And, in fact, Ms. Jones never represented the Petitioner in front of the immigration judge, in front of the Board on appeal. She never entered into appearance in this case at any time in any way related to her deportation proceedings. And in order to establish a claim of ineffective assistance of counsel, you have to establish that the proceedings were — because of the assistance granted by the counsel, it was fundamentally unfair, so as to prevent the alien from reasonably presenting their case in front of the — in the course of their proceedings. And Ms. Jones never entered into appearance in this case. Now, how that escaped me the first time I reviewed this case, the only thing Ms. Jones did in this case, which I will concede is, was inappropriate. After the Board denied — affirmed the district director's denial of the second husband Yu's visa petition, she inappropriately filed a petition for review before this Court, and this Court has no jurisdiction over that, and ultimately, it was dismissed by agreement of the parties or something. That's her only role in this case, and they're making all of these allegations against her that she was ineffective, and yet she's not even a party to the proceedings. So they can't establish ineffective assistance of counsel against Ms. Jones in any way, shape, or form, because she never represented Ms. Chen in front of — in the course of these deportation proceedings. So that's simply a red herring that has really no bearing on this case. I don't know why you couldn't go consult an attorney and be given some bad advice. She could have, but to establish a claim of ineffective assistance of counsel, it's well settled that it has to have had some bearing on your — you have — the assistance that you received had to have rendered your proceedings fundamentally — Where we found — I don't want to use the term ineffective assistance of counsel, but where aliens have relied upon non-lawyers. I don't think there's any case law in this circuit, Your Honor, that says to make out a claim of ineffective assistance of counsel, you can go to some third-party attorney who had no — had never made an appearance in your proceedings or had any bearing on your proceedings or could have in any way affected your proceedings in the legal sense because they weren't — they weren't representing you, had no influence in the proceedings. And even you went to somebody, and they gave you advice, and it was just dead wrong, and you relied on that advice, and you didn't file an application or file a notice of appeal. That's not ineffective assistance of counsel? It might be under some circumstances. But in the circumstances of this case, where they're basically saying this — Ms. Jones could have played a role in their hearings, that actually is completely incorrect. The one issue you did not address, if you can do it in just a second or two, is the allegation against Ms. — I guess the complaint against Ms. Jones is that she didn't file an application for relief, you know, for asylum and cap, based on the fact of the two children. And my response to that is the fact that back in the — it would have been around 97, I believe, at the time that Ms. Jones was playing a role in this case. There was no law even hinting at the fact that the birth of children in the United States could have been a basis for asylum based on China's course of family playing. That was a theory that was just — didn't even come into play until the early 2000s. And now most of the case law — this Court hasn't decided, but most of the case law has said, no, in fact, the birth of children in the United States isn't going to be a basis for asylum. So, I mean, the fact that they — she could have been clairvoyant and thought maybe there's a hope and a prayer down the road someday at some future time or whatever that this might be a potential form of relief is asking an awful lot of Ms. Jones to have anticipated that the law could have evolved in that fashion. Because in 1997, there was absolutely no law on this issue. I cite all of the cases that in the 2000s have said, no, that's not a basis. But there was no such law in the mid-1990s. Okay. Thank you, counsel. With all due respect to my opposing counsel, I believe he made our case because he acknowledged that the judge may have found her eligible for VAWA suspension. Under this Court's decision in Maravilla, that's all that is necessary to show that there was prejudice in not raising the VAWA suspension case. And the fact that the government hasn't even charged her under 241A1G, the way the statute reads is you're eligible for VAWA suspension if you're deportable. Phrasing might have. And all I can get out of that is you think it's ineffective assistance of counsel if there's any logical possibility that a contention might have been successful. I thought there had to be a reasonable probability that it would have been successful. But the way you're phrasing your arguments would not require any reasonable probability of success. Am I mistaken on what the test is? Is a mere logical possibility enough? What is it exactly that you're quoting? Well, the — this Court, I believe, has used the phrase may have affected. And — Context determines what we mean by a phrase like that. Sometimes you can use language like that. We can use language like that to mean, boy, this would have been a really strong contention had it been made. And sometimes it refers to a mere logical possibility. You are apparently taking the latter position. And I think you've just confirmed it. Well, I think there — I think you could say there has to be a logical possibility with some evidence in the record. And in this case, the record has more than some evidence. The record has more than a logical possibility. The claim, and a mere logical possibility, not a reasonable probability, is enough for ineffective assistance. I don't think — I don't think may have affected requires a reasonable probability. But in the context — I understand. I thought in the context of ineffective assistance of counsel claims that our case law says that they have to show a plausibility, a reasonable plausibility that they might — that the error might have affected the outcome. The error might have affected the outcome. Right. So I think that you don't have to show that it's probable the judge would have found her eligible for the relief. I think that the fact that there's a possibility that she could have obtained that relief is sufficient. Maybe that's not as low as a logical possibility as far as mere statutory eligibility. Sorry to me, frankly. I don't think there's a case I handled as a lawyer where afterwards I didn't kick myself for all the things I should have done, even when I won. In Mar-Via, they specifically say — There's always other stuff you can do, and it always might have mattered. And they specifically say in Mar-Via, this Court says they, meaning the attorneys, need not show they would win or lose on the claim. So we can't say she absolutely would have been granted VALA suspension. That can't be the standard. That's what the board seemed to be applying, and the board has mistakenly done before. This is just part of harmless — some kind of harmless error standard, right? I mean, that's what it comes down to. There are lots of different formulations of harmless error standards, but that's what we — that's the question here, whether the ineffectiveness had an effect of some kind, whether it was harmless or not harmless, right? You could phrase it that way, I suppose. But in this case, being — Something like Strickland? It's more like when a judge makes an error, it's not like Strickland, where you have the two branches? I don't believe that's what applies, Your Honor. I don't believe that's the — that's the standard. The — Mar-Via and this Court's case law have not been that strict. They have said that if it could affect the outcome. So the fact that — The harmless error standard normally goes along by saying that you've got to have confidence in the reliability of the outcome, that it would have — that it requires the person who's looking at harmless error to have some fairly degree of confidence. Well, then I would analogize that to the situation where the person makes an application for relief and it's denied, and then later they say, but my attorney didn't present this piece of evidence that might have changed that. Here, the application for relief was never filed at all. The judge found her credible, found in her favor, but was never presented with an application for relief. So that situation clearly cries out for remedy. That's not — it's not just the logical possibility you could have made the application, but everything the judge did suggested, he would favorably consider it. So I don't know that it's clear whether logical possibility we have to go that far, because in this case, there's more than a logical possibility when the judge made a credibility finding in her favor, found her a person of good moral character, and the — and also, the government never charged the only ground that would make her ineligible, and for all we know, the government never will. If the — if the ground of deportation for marriage fraud isn't charged, she's statutorily eligible to apply for relief. Counsel, unless my colleagues have further questions. I just want to respond to one question that the government raised, and that is the district director's decision and its affirmance on appeal by the BIA, and the IJ's decision. The — the question is whether she's — she's only barred from VAWA suspension if she is charged and found deportable under the old 241a1g. And she — the judge found she did not engage in fiancé fraud. She married her husband soon thereafter, and the standard for marriage fraud is her intention at the time she married him. The judge found she consummated the marriage. So the judge — the fact that the government — the district director thought that she engaged in the marriage fraud, the judge was well aware of all of that. The judge heard all the evidence presented, and then some. Judge was well aware of the statement that her deceased husband had made, and he was — it's in the record, and he's well aware of all the evidence the district director had. And then he had to make a finding based on a higher standard, not the exact one — not the 241a1g, but a similar one. And — and — and he found that there wasn't evidence to make that higher standard. So the fact that the district director found against her doesn't decide the question. The judge rules on the application for relief. The judge is the one who finds whether or not she's deportable for marriage fraud, only if that's even charged. Okay. Thank you. Thank you very much.
judges: Merritt , Kleinfeld, Paez